M. GOLDSMITH, Appellant, *v.* CHICAGO AND ALTON
RAILROAD COMPANY, Respondent.

### June 27, 1883.

1. There is no presumption that the statute law of a sister state is that of the forum, but such law must be proved.

2. In the absence of proof of the statute law of a sister state, that which would be the common law of the forum governs.

3. The liability of a common carrier who receives goods for transportation beyond its line, ceases, in the absence of a special contract, when it safely carries and within a reasonable time delivers them to the connecting carrier.

4. The giving of a through rate by the receiving carrier does not create a liability extending beyond its own line.

5. The carrier's receipt which shows that the goods were consigned to a point beyond his line does not make him responsible for the entire route.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Affirmed.*

T. J. Rowe, for the appellant: By virtue of the statutory provision, section 598, Revised Statutes, a common carrier that receives goods for transportation, marked to a certain point, is a carrier to that point. " Whenever, by either the common law or the statute law of a state, a right of action has become fixed and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters, and can obtain jurisdiction of the parties. — *Dennick* v. *Central R. Co.*, 12 Cent. L. J. 393. The appellee is treated in this state as a domestic corporation.— Rev. Stats. 598, sect. 3497; 51 Mo. 521; 29 Mo. 75; 40 Mo. 580; 47 Mo. 542. This action does not arise *ex contractu*, but *ex delicto;* it is an action in case against a carrier for breach of duty. — 42 Mo. 92; 52 Mo. 395; 59 Mo. 360; 64 Mo. 447. " Therefore the *lex fori* prevails over that of the *lex loci contractus.*" Appellee was a carrier for the whole route, because there was an implied undertaking on its part to carry the whole route. — *Root* v. *Railroad Co.*, 45 N. Y. 524; *Coates* v. *Express Co.*, 45 Mo. 238; *Snider* v. *Express Co.*, 63 Mo. 383.

R. H. Kern, for the respondent: There is no presumption that the statute law of a sister state is the same as that of the forum. —*Morrissey* v. *Ferry Co.*, 47 Mo. 521; *Meyer* v. *McCabe*, 73 Mo. 237. In the absence of a special contract, the carrier is liable only for the safe carriage over its own line and the delivery to the connecting carrier.— *Coates* v. *Express Co.*, 45 Mo. 238; *McCarthy* v. *Railway Co.*, 9 Mo. App. 159. The giving of a through rate does not bind the carrier to carry goods beyond its own line. — *Hoagland* v. *Railway Co.*, 39 Mo. 451.

Thompson, J., delivered the opinion of the court.

This was an action against the defendant as a common carrier, for damages sustained by the plaintiff through a delay in the shipment of three hundred and eighty-three

head of cattle from East St. Louis, in Illinois, to Jersey City, in New Jersey. The cattle were delivered to the plaintiff at East St. Louis on Wednesday, the 9th of June, 1880. It does not appear that there was any special contract between the plaintiff and defendant when the defendant's agent delivered to the plaintiff the cattle for shipment ; but a few days afterwards the plaintiff's agent procured from the defendant's agent the following memorandum : —

" C. & A. Railroad Co.    Account of stock from National Stock Yards.

THIS DAY, June 9, 1880.

| Car Initials. | Forwarding Statement. | | |
|---|---|---|---|
| 2485 | No. Hogs . . . . . . . | | cars. |
| 3067 | No. Sheep . . . . . . . | | " |
| 3363 | No. Horses . . . . . . . | | " |
| 2417 | No. Mules . . . . . . . | | " |
| 3009 | No. Cattle . . . . . . . | 283 | 18 " |
| 2487 | | | |
| 2813 | Consignor, Henry Klapfer. | | |
| 2463 | Consignee, M. Goldsmith. | | |
| 2477 | Destination, Jersey City, N. J. | | |
| 3281 | C. S. & Erie R. R. | | |
| 3089 | Rate per car, 70 cts. per H. | | |
| 2765 | Advances, $18. | | |
| 2063 | | JAMES S. LAKE, *Agent.* | |
| 2015 | | Per GOULD." | |
| 2511 | | | |
| 2955 | | | |
| 2983 | | | |
| 2985 | | | |

No evidence was offered tending to explain this memorandum, or to show that it was intended by the parties to express any particular contract or understanding which existed at the time the cattle were shipped. We infer from the testimony that the freight was not paid to the defendant at the time of the shipment ; but that bills for the freight

followed the cattle, and that the freight for the whole transit was paid by the plaintiff to the last bailee, at the stock yards at Jersey City. The transit was performed over the defendant's own railroad from East St. Louis to Joliet, in Illinois; over the Michigan Central Railroad from Joliet to Detroit, in Michigan; over the Canada Southern Railroad from Detroit to Buffalo, New York; and over the New York and Erie Railroad from Buffalo to Jersey City. The usual time of making such a transit from East St. Louis to Jersey City, was one hundred and five hours. If this transit had been completed in the usual time, the cattle would have arrived in Jersey City on Sunday night between eight and twelve o'clock. They did not, in fact, arrive until Wednesday morning. In the meantime there had been a decline in the price of cattle; and besides, three of the cattle had died, others had sustained injuries, and all had lost a good deal in weight beyond what they would have lost had the transit been completed in the usual time. The delay appears to have occurred principally at Buffalo, New York, where the cattle were detained from Saturday until Monday. There was also a delay of about four hours upon the defendant's line, which appears to have occurred through the fact that some cars got out of repair and had to be changed at Joliet. There is no evidence tending to show that this delay of four hours would have worked any damage to the plaintiff but for the delay at Buffalo.

The court, at the request of the defendant's counsel, directed the jury that they could return a verdict for no more than nominal damages. A verdict was thereupon returned in favor of the plaintiff for one cent damages, upon which judgment was entered, and the plaintiff has appealed. No evidence was offered at the trial as to the law of Illinois with reference to the liability of connecting carriers, or the construction of such a contract or memorandum as the bill of lading which was issued by the defendant's agent as above stated. A law of another state of the Union must

be proved as a fact; and where this is not done, the presumption is that the common law is in force in such state, and that the rule of the common law so in force with reference to the subject of the controversy, is the same as the rule of the common law which would govern in the domestic tribunal.   *Wilson* v. *Cockrill,* 8 Mo. 1 ; *Houghtalling* v. *Ball,* 19 Mo. 84 ; *Meyer* v. *McCabe,* 73 Mo. 236. In this case, then, the common law of Illinois with reference to the liability of a common carrier for the negligence of connecting carriers, must be presumed to be the same as the common-law rule in this state.   The rule of the common law as it exists in this state, is, that a common carrier who receives goods for transportation to a point beyond his own line, in the absence of a special understanding to the contrary, engages only to carry them safely, and within a reasonable time, to the end of his own line, and there to deliver them to the next connecting carrier to continue or complete the transit.   *Coates* v. *United States Express Co.,* 45 Mo. 238 ; *McCarthy* v. *Indianapolis, etc., R. Co.,* 9 Mo. App. 159, 166.   The fact that the carrier so receiving the goods gives a through rate of freight for the entire route does not take the case out of this rule.   *McCarthy* v. *Indianapolis, etc., R. Co.,* 9 Mo. App. 159, 166.   See *Snyder* v. *Adams Express Co.,* 63 Mo. 376, 383.   He is still deemed to have received the goods in the character of a carrier for his own route, and of forwarding agent for the shipper for the remaining routes.   It is immaterial that this rule of the common law may have been changed by our legislature.   There is no presumption that the positive or statute law of one state exists in another state. *Morrissey* v. *Wiggins Ferry Co.,* 47 Mo. 521.   It is idle, in the state of this record, for the learned counsel of the plaintiff to cite to us Illinois statutes and decisions to show that what is termed the English rule is the law of that state. No such books were put in evidence at the trial, and we have to decide the case upon the record before us.

The only substantial question, then, for our decision, is, whether the memorandum above set out was a contract for through carriage, which takes the case out of the rule which we have stated, so as make the defendant liable for a loss which the plaintiff is shown to have suffered. We do not think it is. In the first place, it was not delivered at the time of the shipment, and there is no evidence that it was intended by the parties to express any contract which had been made at the time the defendant undertook the carriage. Then, what seems to be conclusive, it does not say in terms that the defendant undertakes for the negligence of connecting lines; and it contains nothing from which the inference of such a meaning can be made out. Its terms were so doubtful as, perhaps, to be susceptible of parol explanation; but no such evidence was offered to show that, by any custom of carriers, it implied a contract to make good the negligence of connecting lines. We do not know that it has been held by courts which adopt the rule on this subject which exists in Missouri, that the mere fact that a carrier gives a receipt for goods which shows that they are consigned to a point beyond the carrier's line, is evidence of an undertaking on the part of the carrier to be responsible as carrier for the entire transit. The contrary has been held by respectable courts. *Converse* v. *Norwich, etc., R. Co.*, 33 Conn. 166; *East Tennessee, etc., R. Co.*, v. *Montgomery*, 44 Ga. 278; *Van Santvoord* v. *St. John*, 6 Hill, 157. In such a case, the carrier discharges his undertaking when he carries the goods to the end of his own line and delivers them to the next connecting line. He is liable to the end of his own line as carrier; beyond that, he is liable only as a forwarder.

That, in the state of this record, must be taken to have been the liability of the defendant in this case. Had it been shown that the delay of four hours which took place at Joliet, before the cattle were delivered to the Michigan Central Railroad Company to continue the transit, caused

the plaintiff any loss, then there perhaps would have been a case to go to the jury on the question of damages; but, as this was not shown, this was at most a wrong without an injury, and a case for only nominal damages.

There was, therefore, no error in the instruction complained of, and the judgment is affirmed. All the judges concur.