T. J. HOLLOWAY *et al.*, Respondents, v. WABASH RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, April 9, 1895.

1. **Railroads:** THROUGH CONTRACT FOR FREIGHT. The giving by a railway company of a through rate of freight to a point beyond its line is not, in itself, evidence of a through contract.

2. ———: WRITTEN CONTRACT FOR TRANSPORTATION. When parties have put their contract in writing, it is conclusively presumed in the absence of accident, fraud or mistake, that their entire agreement, and the extent and manner of their undertaking, is embraced in the writing. This rule is applied herein to a contract for the transportation of goods.

*Appeal from the Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED.

*Geo. S. Grover* for appellant.

*J. G. Trimble* and *W. W. Fry* for respondents.

ROMBAUER, P. J.—The plaintiffs recovered a judgment against the defendant for damages, alleged to have been caused to them by the malperformance of a contract of transportation. The defendant appeals and assigns, among other errors, the refusal of the court to give an instruction that, upon the pleadings and evidence, the plaintiffs could not recover.

The plaintiffs, by their petition, claim that they entered into a contract with the defendant to ship for them one hundred head of assorted stock cattle from Centralia to a feed lot on the banks of the Missouri river, distant about eight miles west of the town of Miami; that the cattle were to be shipped by rail to DeWitt, a station on the defendant's railroad, and thence west by boat to the feed lot. The petition further claims that, instead of carrying out said contract, the defendant first took the cattle to DeWitt, where it unloaded them and carelessly held them for several hours without sufficient feed or water, then reloaded them and took them to Miami station, and there detained them over night without sufficient feed or water, and that, when the cattle arrived the next day at the feed lot, they were feverish and sick, so that they would not fatten and take on flesh as they otherwise would have done, whereby plaintiffs were damaged in the sum of $800.

The answer denies that the defendant agreed to carry said cattle from Centralia to the feed lot. It avers that the cattle were transported under a special written contract, by the terms of which the defendant agreed to carry them from Centralia to DeWitt, and no further. The answer further states that by the terms of the special contract the plaintiff agreed, in consideration of a reduced rate of freight, and of free

transportation for two of its men, to take charge of the cattle while in transit, and to water and feed them at their own expense, and to waive all claims for damages, unless a written claim therefor was made within five days after the transit ended. The answer then states that the defendant fully performed its contract, and safely and within a reasonable time delivered the cattle to the plaintiffs at DeWitt, which was the terminus of the contract route, and that the plaintiffs made no written claim for any damages either within the time specified, or any other.

A careful examination of all the evidence satisfies us that the defendant's instruction in the nature of a demurrer to the evidence should have been given. It appears by the plaintiff's own evidence that, while there was some preliminary conversation between one of the plaintiffs and the defendant's freight agent touching the shipment, such conversation related to a through freight rate, and not to a through freight contract.

The agent gave to the plaintiff a rate on the defendant's line to DeWitt, and at most guaranteed that the freight from DeWitt to the feed lot on a steamer of a connecting carrier would not exceed a certain sum. The plaintiff's evidence concedes that they attempted to get more favorable rates from the connecting carrier. All the evidence concedes that the cattle were to be transported at a lower rate than the tariff rate, and that a written contract for their transportation was to be executed thereafter. When the other plaintiffs arrived at Centralia with the cattle, they executed the contract which is set up in the answer, and the only controversy between them and the agent at Centralia was touching the freight rate, and not touching other parts of the contract. The plaintiffs were large shippers of cattle, and knew that, in order

to obtain a lower freight rate, the cattle would have to be transported under a written contract at owner's risk.

As above seen, there is nothing in the evidence to warrant the inference, that the preliminary conversation between the freight agent and one of the plaintiffs was designed to be a final contract fixing the terms of transportation, or was designed to be anything else than an agreement for a freight rate between Centralia and the feed lot. The giving of a through rate is not, of itself, evidence of a through contract. *Goldsmith v. Railroad*, 12 Mo. App. 479; *Snider v. Express Company*, 63 Mo. 376. The rule in this state is settled beyond controversy that, where parties have put their contracts in writing, in the absence of accident, fraud or mistake, it is conclusively presumed that the whole agreement, and the extent and manner of their undertaking, was reduced to writing. *State ex rel. v. Hoshaw*, 98 Mo. 358; *St. Louis, etc., Railroad Company v. Cleary*, 77 Mo. 634; *Turner v. Railroad*, 20 Mo. App. 632. The plaintiff, who claims to have made the preliminary contract, admits that he made no written contract, and that a written contract was subsequently made. When shown the written contract, he admitted its execution, and that it was part of the contract under which the shipment was made. As the contract was complete in itself, it was in contemplation of law the entire contract; but, even if it would have been only part of the contract, plaintiffs would be debarred of recovery, since, under it, the *onus* was on the plaintiffs and not on the defendant to feed and water the cattle, and the damages claimed in this case are mainly the result of a want of proper feeding and watering, and since plaintiffs would be debarred of recovery even by other parts of the contract, as above shown. There is no pretense

that the cattle were injured in any manner on their transit between Centralia and DeWitt.

As the entire evidence in this case furnishes no ground of recovery, and as the circumstances are such that, in the nature of the case, the plaintiffs can make no better proof, we will not remand the case. All the judges concurring, the judgment is reversed.