DENT H. ROBERT, Respondent, v. CHICAGO & ALTON RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, April 19, 1910.

1. COMMON CARRIERS: Contracts: Place of Performance. Where a citizen of California, starting with his baggage on the return trip from St. Louis to San Francisco, tendered, and the carrier accepted, his baggage pursuant to the terms of his ticket, which was purchased in San Francisco, whereby it became the duty of the carrier to transport the baggage from St. Louis to San Francisco, and there deliver it to the passenger, the place of performance of the contract was San Francisco.

2. ———: ———: ———: Law Governing. A contract evidenced by a railroad ticket is governed by the law of the place where it is made; and hence, where a passenger bought a return ticket

in California, the law of that state governs its performance, unless the authority of its laws should be repudiated, because repugnant to the law and policy of this State, or as not affecting the contract because it was one for interstate carriage and subject to regulation by Congress.

3. ———: **Limiting Liability for Property Lost: Interstate Commerce: State Regulations.** Congress has enacted no law prohibiting agreements regarding the value of the property offered to carriers for interstate shipment and limiting the amount for which they will be liable if the property is lost while in their custody, and the national courts have sanctioned agreements between carriers and owners of property limiting the liability of the carrier for property received for carriage and lost during transit, provided such agreements are just, reasonable, and fairly entered into by the owner, and for a consideration; and such courts enforce state statutes regulating limitations of liability of carriers for interstate shipments in the absence of legislation by Congress.

4. ———: ———: **Consideration Necessary.** A stipulation in a ticket or bill of lading limiting the liability of a common carrier in order to be valid must be supported by an independent consideration, which is usually or invariably a lower fare or freight rate than the carrier charges for the same transportation under ordinary liability.

5. ———: ———: ———: **Differences in Application of Rule in State and Federal Courts: Burden of Proof.** The same rule with respect to requiring a consideration to support a stipulation for limiting the liability of a common carrier obtains in the Missouri and the Federal courts, but the former impose the burden of proving a consideration on the carrier, while the latter impose it on the shipper, presuming in favor of a consideration.

6. **STATUTES: Construction: Acts in Pari Materia.** Sections of statutes relating to the same subject-matter should be construed together in determining their meaning.

7. **COMMON CARRIERS: Limiting Liability for Property Lost: Stipulating Value: Consideration.** A stipulation of value contained in a ticket or bill of lading, if reasonable and made under proper conditions by the passenger or shipper, is regarded here, not as a restriction of the carrier's responsibility for negligence, but as a liquidation of the damages recoverable in the event the property is lost or damaged in any manner for which the carrier is answerable.

148 App—7

8. ———: ———: **Public may Insist on Shipping Without Limitation.** The public may insist on property being accepted for transportation by carriers without any limitation of their responsibility.

9. ———: **Reduced Rate: What is.** A "reduced rate" given by a carrier must be one fixed lower than another rate which is offered to the public, and the sale of a return trip ticket at a price less than two single trip fares is not a reduced rate.

10. ———: **Limiting Liability for Loss of Property: Statutes of California Construed: Consideration Necessary.** California Civil Code, section 2174, provides that the obligation of a carrier cannot be limited by general notice on his part, but may be limited by special contract; section 2175 provides that a carrier cannot be exonerated by any agreement, made in anticipation thereof, from liaility for the gross negligence, fraud, or willful wrong of himself or his servants; section 2176 provides that a passenger, by accepting a ticket or written contract for carriage with the knowledge of its terms, assents to the rate of hire, the time, place, and manner of delivery therein stated, and also the limitation stated therein upon the amount of the carrier's liability for trunks lost or injured, when the value of such property is not named, but his assent to any other modification of the carrier's obligations contained in such instrument can be manifested only by his signature to the same. *Held*, that an independent consideration for a limitation of the common law liability, such as a reduced rate of fare or freight, is essential; and, where a passenger bought a ticket in California to St. Louis and return, which limited the carrier's liability for loss of baggage, and the carrier did not have for sale an unrestricted liability ticket, so that the passenger had no choice of contracts, the ticket he bought was not sold at a reduced rate, so as to be consideration for limitation of liability, and upon loss of the baggage on the return trip he could recover therefor free from limitations.

11. ———: **Limiting Liability: Prerequisite to Validity of Limitation.** Though carriers may restrict their liability as insurers, such privilege is for the benefit of the public, as well as of carriers, and does not permit the carriers to impose conditions restricting liability, whether patrons desire such terms or not, but for such a limitation to be valid, the carrier must be willing to assume the full responsibility imposed by law, and must allow the owner the privilege of choosing between a restricted and full liability.

12. ———: ———: ———: **Acceptance of Ticket or Bill of Lading Without Protest.** Usually the acceptance, without protest, of a ticket or receipt for property, issued by a carrier and containing

restrictions on the carrier's liability, will be treated as an assent by the patron to the terms of the receipt or ticket; and the carrier need not offer an option between the two classes of contracts, but it is sufficient if the patron could have had the unrestricted contract had he demanded it.

13. ———: **Loss of Baggage: Gross Negligence.** The misrouting of baggage by a carrier at a junction point is strong proof of gross negligence.

14. ———: **Baggage Defined.** "Baggage" means those articles of personal convenience and adornment usually taken by a passenger on a journey or a visit and suitable to his station in life and social standing.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey,* Judge.

AFFIRMED.

*Johnson, Rule & Allen* for appellant.

(1) The law of the State where the contract was made governs even though the contract is to be performed in another State. Otis Co. v. Railroad, 112 Mo. 662; Reed v. Tel. Co., 135 Mo. 661; Hartmann v. Railroad, 39 Mo. App. 88; Crouch v. Railroad, 42 Mo. App. 248; Nenno v. Railroad, 105 Mo. App. 540; Townsend and N. D. G. Co. v. Express Co., 133 Mo. App. 683. (2) Under the law of California the contract entered into by plaintiff and defendant agreeing to a limitation of the carriers' liability to $100 in case of loss of his trunk, was valid and enforceable. Sec. 2176, Civil Code of Cal.; Deposition of Henry E. Monroe, abst., p. 31. (3) Plaintiff must be presumed to have had actual knowledge of the contents of the contract which he signed. Merrill v. Transfer Co., 131 Cal. 582.

*Matthew P. O'Reilly* for respondent.

(1) The law of the State where the contract is to be performed governs. Machinery Co. v. Ramlose,

210 Mo. 631. (2) (a) Even under the law of California the contract limiting the liability of a carrier must be a special one and supported by a special consideration. Sec. 2174, Civil Code Cal. (b) Such is the common law. George v. Railroad, 214 Mo. 551; Ward v. Railroad, 158 Mo. 234; Creel v. Railroad, 137 Mo. App. 27; Ficklin v. Railroad, 117 Mo. App. 221; Phoenix P. Co. v. Railroad, 101 Mo. App. 442; Paddock v. Railroad, 60 Mo. App. 328; Conover v. Express Co., 40 Mo. App. 31; Milling Co. v. Railroad, 127 Mo. App. 80. (3) (a) Even under the law of California a carrier cannot contract to limit his liability so as to exempt it for losses caused by its negligence. Sec. 2175, Civil Code Cal.; Merrill v. Transfer Co., 131 Cal. 582; Michalitschke v. Wells Fargo, 118 Cal. 683. (b) And such is the common law. Witting v. Railroad, 101 Mo. 634; Anderson v. Railroad, 93 Mo. App. 677; Conover v. Express Co., 40 Mo. App. 31. (4) It was gross negligence for the defendant to deliver the trunk to any one else than the Santa Fe. Lin v. Railroad, 10 Mo. App. 125; 4 Elliott, Railroads, 2248; Railroad v. Nicolai, 4 Ind. App. 119; Merrill v. Transfer Co., 131 Cal. 582; Railroad v. Cole, 68 Ga. 623; Johnson v. Railroad, 33 N. Y. 610; Robertson v. Merchants Co., 45 Ia. 470; Hinckley v. Railroad, 56 N. Y. 429; Railroad v. Allison, 59 Tex. 193; Independence Co. v. Railroad, 72 Ia. 535; Campian v. Railroad, 43 Fed. 775; Duncet v. Wade, 3 Ill. 285; Levi v. Railroad, 35 La. Ann. 615; Merrick v. Webster, 3 Mich. 268; Brown v. Railroad, 63 Minn. 564. (5) A carrier may not violate the contract and at the same time claim the benefit of the contract. 4 Elliott on Railroads, 2248; Hostetter v. Park, 137 U. S. 30; Estes v. Railroad, 7 N. Y. Supp. 863. (6) Jewelry is baggage when carried for personal use or adornment on the trip or at the destination. Article by Mr. Lawson, 38 C. L. J. 5-6; Macrow v. Railroad, L. R., 6 Q. B. 612; Railroad v. Fraloff, 100 U. S. 24; Mauritz v. Railroad, 23 Fed. 765; Pettigrew v. Barnum, 11 Md. 434; Coward

v. Railroad, 16 Lea 225; Railroad v. Carrow, 73 Ill. 348; McGill v. Roannd, 3 Pa. St. 451; Torpey v. Williams, 3 Daley 162; Brooks v. Pickwick, 4 Bing. 218; Keith v. Railroad, 2 Ohio Dec. 125; Merrell v. Grenell, 30 N. Y. 594; Jones v. Vorhees, 10 O. 145; McCormick v. Railroad, 4 Ed. Smith (N. Y.) 181; Contract Co. v. Cross, 8 Bush. 422; Railroad v. Hammond, 33 Ind. 379; Bruty v. Railroad, 32 Up. Can. (Q. B.) 66.

GOODE, J.—This plaintiff, a resident of San Francisco, California, purchased in that city from the Atchison, Topeka & Santa Fe Railroad Company, on September 10, 1904, a railroad ticket good for passage from there to St. Louis, Missouri, and return, over said railroad company's line between San Francisco and Kansas City, and over the Chicago & Alton railroad between Kansas City and St. Louis. He testified there was no attempt made when he bought the ticket to conceal from him any of the printed conditions. He reached St. Louis where he sojourned about six weeks and then started on his return trip, October 16th, having first had his ticket validated according to its terms at the Chicago & Alton Railroad Company's office in St. Louis. Plaintiff then took the ticket to the office of the St. Louis Transfer Company, a corporation engaged in hauling baggage from houses in St. Louis to the union station. The purpose of plaintiff was to have the transfer company check his trunk at the residence where he was stopping, through to San Francisco. He gave the company the railroad ticket and fifty cents to pay the charge for transferring baggage to the union station, the company sent a baggage wagon to the house where plaintiff was stopping, checked the trunk there and gave him a duplicate check. The evidence proves the transfer company gets the checks used by it from the railway companies running into St. Louis, including defendant, and issues the checks in accordance with the routing of the tickets held by the owners of baggage.

Plaintiff's trunk was checked and routed by the transfer company as agent of defendant, and this is not disputed. The check number on plaintiff's trunk was 142,736, as shown by papers taken from the files of the Terminal Railway Association of St. Louis, which contained a list of the items of baggage turned over to said association by the transfer company on October 15th. The check had printed on it a provision that "agents and baggagemen must enter on checks the name of issuing line, form number, complete route and junction points of ticket on which check was issued." It was the course of business of the transfer company to check baggage at residences and hotels, haul it to the union station and there turn it over to the Terminal Railway Association. The list of items aforesaid taken from the files of the Terminal Association contained, among others, this item referring to plaintiff's baggage:

| "Destination. | Route. | Through Check Nos. | Claim Check Nos. | Street & No. | Amount to Collect. |
|---|---|---|---|---|---|
| *   *   * | *   * | *   * | *   *   * | *   * | *   * |
| San Francisco | C. & A. | 142736 | | 3224  Wash. A. | |
| *   *   * | *   * | *   * | *   *   * | *   * | *   *" |

That notation meant the said railroad association had received a piece of baggage from the St. Louis Transfer Company, checked to San Francisco, that the check number was 142,736, and the letters "C. & A." indicated the routing; that is, the trunk was to go over the Chicago & Alton Railroad, and according to the course of business it was the duty of the Terminal Railroad Association to deliver the trunk to the Chicago & Alton Company. It should be remembered this trunk was checked by the St. Louis Transfer Company upon

plaintiff's ticket which had been turned over to said St. Louis Transfer Company, and purported to be issued by the Atchison, Topeka & Santa Fe Company for a trip between San Francisco and St. Louis and return, as heretofore stated. Plaintiff testified the part of the check issued to him, there being a part fastened to the trunk, showed the trunk was routed over the Atchison, Topeka & Santa Fe Railroad from Kansas City. When the trunk reached Kansas City, as it did in safety, instead of being turned over to the Atchison, Topeka & Santa Fe Company, it was placed on Union Pacific train No. 3, which train was bound for Denver, and the trunk was routed out of Denver on the Denver & Rio Grande railroad. It was afterward put on a train of the Southern Pacific Railroad Company and was burned in a wreck on that railroad at Yuba Pass. This action is to recover the value of the trunk and its contents, the total value being laid at $1137.33. The contents are itemized and consist, besides suits of men's clothing, vests, hats, shoes, neckties, underwear, shirts, cuffs and collars, of the following articles which defendant asserts were not baggage:

"One gold match box with 1 1-2 carat diamond
    setting .. .. ......................$260.00
One pink pearl in diamond setting .......... 150.00
One brown onyx ring with initial "R".. .... 14.00
One scarf pin of gold, a crab holding small dia-
    mond in claws .. ................... 38.00
One silver cross ........................ 2.00
One silver watch charm ................ 6.00
One pr. gold cuff buttons with diamonds.... 45.00
One plain gold match box ................ 20.00"

The petition charges in substance the delivery of the trunk and contents to the Chicago & Alton Railroad Company in St. Louis, the duty of said company to carry it safely and deliver to plaintiff at San Francisco; that in disregard of its duty as a common carrier, defendant had failed to do this, whereby plaintiff was

damaged in the sum aforesaid. The eighth paragraph of the ticket reads:

"The purchaser agrees that the value of baggage offered for carriage does not exceed $100; and in case of loss of, or damage to, the same from any cause, the carrier shall not be liable for a greater amount."

"I hereby agree to all conditions of the above contract.

"(Signed)        DENT H. ROBERT, Passenger."


It will be perceived plaintiff subscribed his name below said paragraph of the ticket. He testified he was hurrying to St. Louis on account of illness in the family and so he asked for a round trip ticket on the train known as the California Limited, requesting the agent to sell him a ticket over the lines of railway companies which made the quickest trip between San Francisco and St. Louis, stating his reason; the ticket was given him to sign and he signed it; he did not remember whether he asked the price of it; the man in charge of the office handed him pen and ink and the ticket and indicated or told him where to sign it. Plaintiff made this further statement: "I signed it because I could not purchase it otherwise." The Assistant General Passenger Agent at San Francisco of the Atchison, Topeka & Santa Fe Railroad Company, on September 10, 1904, when the ticket was purchased, testified $102 was paid for it, which was the fare from San Francisco to St. Louis and return, over the road of said company to Kansas City and thence over the Chicago & Alton Railroad to St. Louis, the one way fare was $67.50, the reduction being made on account of the purchase of a round trip ticket. This witness said it was customary for the Santa Fe Company to give a reduction for an excursion or round trip ticket; that on the California Limited only first-class tickets were accepted; the one sold to plaintiff was not the only ticket accepted on that train, but any ticket marked "first-class" was ac-

cepted if it was punched to indicate first class. Defendant introduced the following sections from the Civil Code of California:

"Section 2176. Effect of written contract.—A passenger, consignor or consignee, by accepting a ticket, bill of lading or written contract for carriage, with a knowledge of its terms, assents to the rate of hire, the time, place and manner of delivery therein stated, and also the limitation stated therein upon the amount of the carrier's liability in case property carried in packages, trunks or boxes, is lost or injured, when the value of such property is not named; and also to the limitation stated therein to the carrier's liability for loss or injury to live animals carried. But his assent to any other modification of the carrier's obligations contained in such instrument can be manifested only by his signature to the same."

Defendant put in also the testimony of an attorney in San Francisco, which was, in effect, that paragraph eight of the ticket, limiting the amount to be recovered for loss of baggage, was enforceable in California "as a fair, just and reasonable provision. In rebuttal, plaintiff offered the following sections from the Civil Code of California:

"Section 2174. Obligation of Carrier Altered Only by Agreement.—The obligation of a common carrier cannot be limited by general notice on his part, but may be limited by special contract. En. March 18, 1872. Am'd 1873-4, 249.

"Section 2175. Certain Agreements Void. A common carrier cannot be exonerated by any agreement made in anticipation thereof from liability for the gross negligence, fraud, or wilful wrong of himself or his servants. En. March 21, 1872."

Plaintiff also put in evidence the opinions of the Supreme Court of California in Michalitschke v. Wells Fargo Ex. Co., 118 Calif. 683 and Merrill v. Pac. Transfer Co., 131 Calif. 582. Two of the main instructions

granted at the instance of plaintiff held defendant liable for the full value of the trunk and its contents, if defendant carried the trunk to Kansas City and there delivered it to some other person or corporation than the Santa Fe Company, provided the jury found plaintiff paid the highest price for his ticket for which similar tickets were sold to the public at the time of the purchase between San Francisco and St. Louis and return. The second of those instructions declared if the jury believed the ticket was the highest priced ticket sold by the Atchison, Topeka & Santa Fe Railroad Company to the public at the date of sale over its railroad from San Francisco to St. Louis and return, "then the stipulations contained in said ticket, if any, limiting the amount of the value of baggage and also the liability of defendant company for loss or damage to same to one hundred dollars, is void." This instruction was granted at plaintiff's instance:

"If the jury believe from the evidence that the defendant, Atchison, Topeka & Santa Fe Railway Company, would not sell to the plaintiff a ticket from San Francisco, California, to St. Louis, Missouri, and return, unless he signed the ticket and required the plaintiff to sign the same before it would sell it to him, and that said ticket was the highest priced ticket sold to the public between the cities named, and return, then by signing the said ticket the plaintiff did not assent to its terms and all stipulations limiting the liability of the railroad company as to the value of the baggage therein, are void."

The main instruction granted at defendant's request declared, in effect, if defendant safely transported the trunk and contents from St. Louis to Kansas City and there safely delivered the same to the connecting carrier named in the ticket, or said carrier's agent, and the trunk was not lost, damaged or destroyed while under its control, the verdict must be for defendant. The issue of whether defendant delivered the trunk to

the Santa Fe Company as the ticket required, was submitted to the jury, and as the jury found it was not and the evidence permitted no other finding, we will say nothing more about that matter. The jury were advised a passenger over any railroad was entitled to carry with him his baggage, which meant those articles of personal comfort, convenience and adornment usually taken by a traveler on a journey or visit; unless they found from the evidence the articles of jewelry found to have been contained in plaintiff's trunk were articles of comfort, convenience and adornment such as were usually carried by a person in plaintiff's station in life and social standing, he could not recover for those articles. At defendant's request the jury were told there was no evidence defendant was guilty of "gross negligence, fraud or wilful wrong." Of its own motion the court granted an instruction which made the agreement as to value binding if the jury found a reduced rate was charged for plaintiff's passage and plaintiff knew, or had opportunity to know, of the restriction when he signed the ticket, and if the jury found that under the law of California such a limitation was enforceable. Certain requests of defendant were refused. Two were, in substance, that unless the jury believed the trunk and contents were lost while under the control of defendant, the verdict must be in its favor. Two others were predicated on the theory that if the rate of fare charged plaintiff for a round-trip ticket was less than double the one-way fare between San Francisco and St. Louis, the ticket was issued to plaintiff at a reduced rate of fare, and the agreement in it regarding the valuation to be put on his baggage in case of its destruction or loss was a valid contract under the law of California. Defendant likewise requested an instruction which the court refused, advising the jury they could not return a verdict against defendant in any sum greater than one hundred dollars in case the findings were for plaintiff. That request was, in effect, one for a verdict in

favor of defendant. Exceptions were saved to adverse rulings on the requests for instructions. The verdict returned was for $1023.60 in favor of plaintiff, and judgment having been entered accordingly, defendant appealed.

The question for first solution is what law should control our decision, plaintiff contending we should follow the law of Missouri as the place of performance contemplated by the parties, whereas defendant insists the law of California where the contract was made, should govern. The contract of carriage was to be performed in part in Missouri, but also in California and the states between those two through which plaintiff would travel in going from San Francisco to St. Louis and return. It must be remembered plaintiff was a citizen of California and had started with his baggage on the return trip from St. Louis to San Francisco; further, the gravamen of the petition is that he had tendered said ticket to defendant, the latter had accepted plaintiff's baggage pursuant to the contract (*i. e.* the ticket) and it became the duty of defendant to carry the baggage from St. Louis to San Francisco and there deliver the same to plaintiff; but in violation of its duty, defendant had failed to deliver the baggage to plaintiff, though often requested to do so. As the case is thus stated, the place of complete performance of the contract between the parties, was the place where the trunk was to be delivered by defendant to plaintiff, or San Francisco; and having regard to all the facts, it is impossible to hold Missouri was contemplated by the parties, including the Santa Fe Company which sold the ticket, as the place where the contract was to be performed. But if it was, the great weight of authority favors the rule that such a contract is governed by the law of the place where it was made; a rule which has been declared in several decisions of the appellate tribunals of this State. [Otis v. Railroad, 112 Mo. 622, 20 S. W. 676; Goldsmith v. Railroad, 12 Mo. App. 479; Townsend, etc.,

Co. v. Express Co., 133 Mo. App. 683, 113 S. W. 1161; 1 Hutchinson, Carriers (M. & D. Ed.), sec. 215 *et seq.*] We hold the law of the case must be found in pertinent statutes and decisions of the state of California, if such there are, unless their authority should be repudiated because repugnant to the law and policy of this State, or as not affecting the contract in question, which was one for interstate carriage and subject to regulation by Congress. Congress has enacted no law to prohibit agreements regarding the value of property offered to railway companies or other common carriers for interstate shipment and limiting the amount for which they will be liable if the property is lost while in their custody. We find no provision to that effect in the original Interstate Commerce Act or in any amendment of it; but in Ward v. Railroad, 158 Mo. 226, 58 S. W. 28, it was held said act prevented a reduced rate of freight being made to the consignor for such a valuation, a conclusion we cannot reconcile with the opinion of the Interstate Commerce Commission pronounced in In re Reduced Rates, 13 I. C. C. 550, or with the opinion of the Supreme Court of the United States in Cau v. Railroad Co., 194 U. S. 427. The national courts have sanctioned agreements between a carrier and an owner of property limiting the amount the former shall answer for in damages as the value of the property received for carriage, if lost during transit, provided the agreement as to value and limitation of liability is just, reasonable, fairly entered into by the owner, and for a reduced rate or other consideration moving him to consent to a restriction of the responsibility of the carrier as an insurer. [Hart v. Railroad, 112 U. S. 131; Cau v. Railroad, supra.] And those courts enforce state statutes regulating limitations of the liability of carriers for interstate shipments, in the absence of legislation on the subject by Congress. [Solan v. Railroad, 169 U. S. 133; Penn., etc., R. R. v. Hughes, 191 U. S. 477.] Such a stipulation contained in a ticket or bill of lading issued

in this State, is enforced by our courts, if it is agreed to by the property-owner advisedly and with a free choice between the restricted agreement and the alternative right accorded him by the carrier to have his property carried under an unrestricted one; provided a reduced rate is allowed him, or some other advantage by way of consideration not conceded to patrons when the valuation of the shipment is not stipulated. [Kellerman v. Railroad, 136 Mo. 177, 37 S. W. 828; Harvey v. Railroad, 74 Mo. 538.] The doctrine of the Missouri courts and we think of the Federal courts requires the stipulation to be supported by an independent consideration, which is usually, or invariably, a lower fare or freight rate than the carrier charges for the same transportation under ordinary liability. The difference between the two groups of tribunals seems to be that those of Missouri impose the burden of proving a consideration on the carrier, whereas the Federal courts impose it on the shipper, presuming in favor of a consideration. [Kellerman v. Railroad, 68 Mo. App. 255, 136 Mo. 177; York v. Railroad, 3 Wall. 107; Cau v. Railroad, supra.]

The next inquiry is whether the law of California is in accord with our law on the subject; an inquiry to be answered from sections 2174, 2175 and 2176 of the Civil Code of California and the decisions of its Supreme Court expounding them, so far as this has been done. Said sections relate to the same subject-matter and should be construed together, in fact, have been by the Supreme Court of the State. [Michalitschke v. Express Co., supra.] Regarded with reference to the case in hand, section 2176 says a passenger who accepts a ticket for carriage with knowledge of its terms, assents "to the limitation stated therein upon the amount of the carrier's liability in case property carried in packages, trunks and boxes is lost or injured, when the value of such property is not named." It will be perceived the statutes of California authorize agreements limiting liability for damage to property in transit caused

by the negligence of carriers, which agreements the courts of this State annul. A stipulation of value contained in a ticket or bill of lading, if reasonable and made under proper conditions by the passenger or shipper, is regarded here, not as a restriction of the carrier's responsibility for negligence, but as a liquidation of the damages recoverable in the event the property is lost or damaged in any manner for which the carrier is answerable. [Harvey and Kellerman cases, supra.] And this is the theory of the Federal courts also. [Hart v. Railroad, supra.] But by force of the statutory authority conferred on carriers to contract against the consequences of their negligence, unless it is gross, the Supreme Court of California has enforced stipulations of value in cases where it appeared damage might have occurred from the carrier's neglect; and the distinction between ordinary and gross negligence, was maintained. [Opinion of TEMPLE, J., in Michalitschke case.] Section 2176 does not expressly exact a consideration for an agreement as to the value of baggage, independent of the ticket issued to the traveler, but section 2174 says restriction of the liability of a carrier must be by "special contract." The point to be examined is whether those words and the three sections read as a whole, imply that an independent consideration, like a reduced rate of fare or freight, is essential to the validity of such an agreement; or whether it is enough that a patron is accorded passage even if it appears the price charged was the usual one and that there was no other form of contract available to him. We coincide with the view of counsel for defendant that the purpose of the words "special contract," was to signify no restriction of liability could be imposed on the public by the carrier giving notice it would not accept business under full responsibility, as once might be done in England. Nevertheless we think an independent consideration for a limitation of the common law liability was contemplated by the Legislature. It is the law everywhere in this coun-

try, we believe, that the public always has the right to insist on property being accepted for transportation by common carriers without any limitation of their responsibility. Indeed, the alternative of an unrestricted ticket or bill of lading must be accorded as one condition of a valid limited contract. [Cases infra. See, too, The Kensington, 183 U. S. 277.] This being true it is not reasonable to think the Legislature of California meant merely to legalize the gratuitous waiver by property-owners of the responsibility of a carrier, since it is improbable a waiver would ever occur without some inducement for it; and especially would liability for ordinary negligence not be waived gratuitously. The sections supra of the California Code have not been construed by the Supreme Court of the state with reference to the immediate point. In Michalitschke v. Express Co., the answer averred a reduced freight rate, but in the opinion nothing was said of the averment. The controlling opinion was delivered by TEMPLE, J., and concurred in by the third judge of the Department of the Supreme Court which determined the case. The action was for the value of packages of cigars lost in transit between New York and San Francisco, for which a bill of lading or receipt had been issued by the defendants, stipulating against liability for loss or damage to an amount in excess of $50, unless the value of the shipment was stated in the receipt. No value was stated, and in the answer defendants set up the receipt with its terms of limitation, alleged the plaintiffs had full knowledge of the terms at the time they accepted the receipt, that a reduced rate of transportation was paid, and the regular rate would have been charged if defendants had known the value of the package was $625. The Supreme Court said the plaintiffs could recover the full value of the cigars, provided they proved the loss was due to the gross negligence of the defendants, and held the Civil Code authorized a carrier to limit its liability for packages the value of which was not stated, except

when the loss resulted from gross negligence or wilful wrong. In Merrill v. Transfer Co., 131 Cal. 582, the plaintiff sued as assignee of his wife to recover damages for the defendant's failure to deliver a trunk belonging to the wife at plaintiff's residence in San Francisco. The receipt issued by the Transfer Company for the trunk contained printed terms which said the company would not be liable for the loss of money, merchandise or jewelry contained in baggage in any event, or for any trunk and contents in a sum exceeding one hundred dollars, or for any valise and contents in a sum exceeding twenty-five dollars, unless specially agreed in writing. The plaintiff did not read the receipt when it was issued, but he was familiar with the methods of business of the company, and there was light enough for him to read. The question in the case was whether the plaintiff had notice of the terms of the receipt under section 2176 of the Civil Code, which made such a receipt effective if accepted "with knowledge of its terms." It was said opportunity to know the terms, or knowledge of facts to put one on inquiry, was notice of them. Merrill paid the Transfer Company for the service it was to render, "the price usually charged, which was fifty cents for each trunk;" but this matter was not involved in the decision nor adverted to in the opinion. The restriction was held good under section 2176 of the Civil Code, the Transfer Company exonerated unless the loss of the trunk could be proved to have been caused by its gross negligence, and whether or not this was true was held to be a question for the jury. Though the opinion deals mostly with the question of whether the plaintiff had notice of the terms of the receipt, in discussing that question the validity of the stipulation was incidentally touched upon. The court remarked not only upon the plaintiff's opportunity to read the receipt, but upon his having paid the usual price charged for the service rendered by the company. As to the latter circumstance a pas-

sage from the opinion of the Supreme Court of New York, delivered on similar facts, in Kirkland v. Dinsmore, 62 N. Y. 171, was quoted wherein the New York court said if that plaintiff had objected at the time the receipt for his baggage was issued, "the defendant would have been entitled to exact as a condition of carrying the parcel, compensation equivalent to the risk of insuring it." If the statutes of California are held to require a consideration for an agreed valuation of property, the law there will accord with the law elsewhere. We pronounce on this point with diffidence in the absence of more light from the Supreme Court of California.

Turning now to the facts of the present controversy in order to determine their effect under the law as we have ascertained it, we observe that it is to be borne in mind no consideration for the stipulation as to the value of plaintiff's baggage, other than a reduced fare, was contended for by defendant, and whether a lower fare was charged was an issue on which both parties introduced evidence instead of invoking a presumption. The defendant now insists the evidence established its contention, as it proved the price of a round-trip ticket was less than the sum of the prices of a going and return ticket. We deem this position untenable. The Interstate Commerce Act required the two railway companies plaintiff dealt with to prescribe schedules of regular rates for the different services they stood ready to render. [Act, section 6.] Defendant not only failed to prove those companies had fixed a rate for an unlimited ticket or offered such for sale; but in our judgment the contrary was conclusively shown and defendant cannot be heard to claim, in the face of the evidence on the issue, that the fare charged plaintiff was reduced, on the theory that he would have been sold an unrestricted ticket at a higher price had he demanded one. A "reduced rate" must be one fixed lower than another rate which is offered to the public; and that no higher rate was pre-

scribed by the Atchison, Topeka & Santa Fe Railway Company and defendant, appears beyond doubt, if we reject the theory that the round-trip fare was a "reduced rate" because less than two single-trip fares. [Duvenack v. Railroad, 57 Mo. App. 550.] The leading Federal case (Hart v. Railroad, 112 U. S. 331) is in accord with the view that a reduced rate or other consideration must be given to support a limited liability contract of affreightment; and we think the United States Supreme Court has not rejected the rule therein declared, though Cau v. Railroad excites a doubt as to whether the rule now is that no independent consideration for a restrictive stipulation is required or merely that the rate will be presumed to be reduced if such a stipulation is inserted in a bill of lading, unless the contrary is shown by the party contesting the validity of the restriction. See, too, York Co. v. Railroad, 3 Wall. 107. Whatever the Federal doctrine on this point may be, under the decisions in this State it is clear there was no consideration for the limitation of liability in the present case, and those decisions ought to govern us, if the question is an open one under the California decisions and not regulated by an Act of Congress. [Flato v. Mulhall, 72 Mo. 522; Philpott v. Railroad, 85 Mo. 164; Johnston v. Gawtry, 11 Mo. App. 322, 83 Mo. 339.]

In the third instruction granted at plaintiff's request, the jury were advised that plaintiff did not assent to the restrictive stipulation in his ticket if it was the highest priced ticket sold to the public between San Francisco and St. Louis and return, and if the jury found from the evidence the Atchison, Topeka & Santa Fe Company would not sell plaintiff the ticket unless he signed it. The theory of this instruction doubtless was that by requiring plaintiff to sign the ticket before it would be issued to him, he was, perhaps, laid under compulsion to assent to the conditions of the ticket and this compulsion rendered the stipulation null. As said supra, though carriers are allowed to restrict their lia-

bility as insurers, this liberty has been conceded for the benefit of the public as well as of carriers, and does not embrace the right on the part of the latter to impose conditions restricting liability whether patrons desire such terms or not. For the limitation to be valid the carrier must be willing to assume in transporting the proffered property, the full responsibility the law imposed, and must allow the owner the privilege of choosing between a restricted and full liability. [1 Hutchinson, Carriers, sec. 404; McMillan v. Railroad, 16 Mich. 79; Little Rock, etc., v. Cravens (Ark.), 18 L. R. A. 527; Deming v. Railroad (Tenn.), 13 L. R. A. 518; Railroad v. Gilbert, 88 Tenn. 430, 12 S. W. 1018.] Usually the acceptance without protest of a ticket or receipt for property issued by a carrier and containing restrictions on the latter's liability, will be treated as an assent by the owner to the terms of the receipt or ticket. It is not necessary for the carrier to offer the property-owner the option between the two classes of contracts, but it is sufficient if he could have had the unrestricted contract had he demanded it. [Railroad v. Stone, 112 Tenn. 248, 79 S. W. 1031; Arthur v. Railroad, 139 Fed. 127; Akin v. Railroad, 80 Mo. App. 8.] As regards the present case this point is covered by the treatment of the previous one, and for two reasons: First, the evidence showed conclusively defendant did not sell an unrestricted liability ticket, and plaintiff had to accept the one he bought or go by some other route or some other train; second, the third instruction did not invalidate the stipulation as to the value of plaintiff's baggage unless the jury found, not only that he was required to sign the stipulation, but also that the ticket sold was the highest priced ticket for transportation between San Francisco and St. Louis and return. Hence the instruction simply added to the burden of proof imposed on plaintiff in the first and second instructions, the burden of proving another fact in order to recover.

In our opinion there was evidence tending to show the loss of the trunk occurred by defendant's gross negligence; an observation we make lest we be thought to indorse the view of the court below on the question. The misrouting of it at Kansas City is, to our minds, strong proof of gross negligence, and it is doubtful if it did not lay defendant liable despite the restriction.

The instructions as to what constitute baggage are approved. [Hubbard v. Railroad.] Those instructions are not challenged by defendant, but it is said the evidence of plaintiff's social position was insufficient to warrant a finding that the jewelry lost by him was such as a man in his position might carry as baggage. This assignment is without merit, we think.

The judgment is affirmed. All concur.