ARTHUR et al. v. TEXAS & P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. May 16, 1905.)

No. 2,044.

1. CARRIERS—BILL OF LADING—LIMITATION OF LIABILITY—FIRES.

The consideration expressed in a bill of lading for the transportation of cotton was sufficient to support the whole contract, including a provision exempting the carrier from liability for a loss by fire.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 641–643.]

2. SAME.

Where a shipper accepted a bill of lading for the transportation of cotton containing a fire exemption clause, without requesting that the carrier furnish a rate at which it would ship the cotton under a common-law liability contract, the shipper merely assuming that such a rate would not be conceded, the carrier was not liable for loss of the cotton by fire not due to the carrier's negligence.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 691, 692.]

3. SAME—INDEPENDENT CONTRACTORS—NEGLIGENCE.

Pursuant to a rule of the Texas Railroad Commission, providing that when cotton is tendered to railroad companies on compress platforms situated on the track of such railroad companies it shall be the duty of such companies to take charge of and receipt for the cotton in the same manner and on the same terms as they would receive and receipt for cotton when taken at their own depots or platforms, etc., defendant's company issued a bill of lading for cotton delivered by plaintiff to an independent compress company on a compress receipt, the bill of lading providing that each carrier carrying the cotton should be entitled at its own cost to compress the same for greater convenience in handling and forwarding, etc. While the cotton was on the platform of the compress company with other cotton, and before actual delivery to defendant, but after the issuance of such bills of lading, it was destroyed by fire communicated by the engine of another railroad company. *Held,* that the compress company, being a separate independent contractor, was not the servant or agent of defendant, and that the latter was therefore not liable for its negligence in storing or handling the cotton.

[Ed. Note.—Negligence of employé of independent contractor, see note to Atlantic Transport Co. v. Coneys, 28 C. C. A. 392.]

In Error to the Circuit Court of the United States for the Western District of Arkansas.

This is an action instituted by plaintiffs in error against the defendant in error to recover $2,605.53, the value of 50 bales of cotton alleged to have been delivered to the defendant company by plaintiffs at Texarkana, Tex., to be transported to Utica, New York. The defendant company, a railroad corporation in the state of Texas, had its depot station in Texarkana on the Texas side, the state line between Texas and Arkansas running through said city. The defendant company had no line of railway from Texarkana to Utica, N. Y., but had a traffic arrangement for the division of revenues between it and connecting carriers between Texas and Utica. The defendant company had authority to give a bill of lading for the shipment of cotton made over the through line, the rate of shipment from Texarkana to St. Louis being 25 cents per 100 pounds, and from there to Utica 60 cents, making in the aggregate 85 cents. The petition alleged that the defendant company held itself out as a common carrier for such transportation.

The Union Compress Company was an independent corporation, engaged in the business at Texarkana of compressing cotton delivered by shippers at said point for transportation. Its platforms for such purpose were on the Arkansas side of the state line. According to the usage of such business which pre-

vailed at that place, as at other shipping points in Texas and Arkansas, when cotton was brought in by shippers it was unloaded at the platforms of the compress company, and a receipt taken therefor from said last-named company by the shipper, which he would carry to the agent of the railroad company, who would take the same up, and issue, based thereon, a bill of lading to the shipper. The compress company retained possession of the cotton until such time as it could compress the same, and when compressed it delivered the same on board the cars of the railroad company. The bill of lading in this case contained the following stipulation: "That neither the Texas & Pacific Railway Company nor any connecting carrier handling said cotton shall be liable for damages to or destruction of said cotton by fire, nor for any loss thereof or damage thereto by causes beyond its control." It contained the further stipulation that: "Each carrier over whose route the cotton is to be carried hereunder shall have the privilege, at its own cost, of compressing same, for greater convenience in handling and forwarding, and shall not be responsible for deviation or unavoidable delays in procuring such compression." Two days after the cotton was so left upon said platform it was destroyed by fire, in connection with a large amount of cotton belonging to other shippers, with which it had been mingled. The fire was caused by sparks communicated to some part of the quantity of cotton on the platform from a passing engine of another railroad company.

The petition alleges that said platform of the Union Compress Company was not a safe place on which to keep cotton; that it was not inclosed, and no proper provision was made to prevent its destruction by fire; that the compress company had failed to provide suitable or proper apparatus for putting out fires, or to keep proper watch over the same; and that it was destroyed by reason of the negligence of those in charge thereof. The further allegation of the petition is that the defendant railroad company received the cotton from the plaintiffs and turned the same over to the compress company as its agent, to be compressed, and that it is responsible for the negligent act of its agent.

The answer denied that the defendant company received the cotton from the shipper; but alleges the facts, as above stated, that the shippers delivered the cotton in fact to the compress company as an independent contractor, and that it was not at the time the agent of the defendant company for the compression and preparation of said cotton for transportation. It put in issue the allegation of the petition that it held itself out as a common carrier for said cotton from Texarkana to Utica, or that it was in partnership with the other roads which were to carry the cotton to its destination. It admitted that it had a traffic arrangement with the other roads upon a division of revenues for the carriage of said cotton over the lines to Utica, N. Y. The answer alleged that the entire line owned and operated by the defendant was in the state of Texas; that it had its own depot station in Texarkana, in the state of Texas; and that the cotton was delivered as aforesaid at said platform of the compress company for compression according to the rules and regulations that prevailed in such matters.

The evidence tended to show that the cotton, while on said platform, was not properly safeguarded against accident or destruction by fire, and that the servants of the compress company perhaps did not keep sufficient watch over the cotton to prevent its destruction in the event of fire being communicated to it by railroad engines passing said platform.

The Railroad Commission of the State of Texas had adopted and maintained in force the following rule in reference to the receipt of cotton by railroads in Texas located on cotton compress platforms: "When cotton is tendered to railroad companies upon compress platforms, which is situated on the track of such railroad companies, it shall be the duty of the railroad companies to take charge of and receipt for such cotton in the same manner and on the same terms as they would receive and receipt for cotton when taken at its own depot or platform erected for such transactions; provided, however, that the shipper or the compress company shall in such cases assume the additional risk of insurance involved by such act of the railroad company." Pursuant to said regulation the defendant railroad company adopted rule 11, covering substantially the requirements of said regulation. The plaintiffs were cotton buyers at Texarkana, and had for some time prior to the shipment in question been shipping

cotton on like arrangements with the defendant company, and were familiar with the usages that obtained at said place in respect of such shipments.

At the conclusion of the evidence the court directed the jury to return a verdict for the defendant, which was done, and judgment entered accordingly, to reverse which the plaintiffs prosecute this writ of error. Other facts will appear in the following opinion.

W. H. Arnold, for plaintiffs in error.

Hiram Glass (W. L. Estes and John J. King, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of the court.

The plaintiffs seek to avoid the stipulation in the bill of lading, which exempted the railroad company from liability for the loss of said cotton occasioned by fire, on the ground of what counsel terms duress in accepting said bill of lading, and for the want of proper consideration for such special exemption. He contends that the railway company had established and offered but one rate for such through shipment, based upon such exemption, without affording the shipper the alternative opportunity of paying a higher rate of carriage to fix upon it the common-law liability of such common carrier. The validity of such provision in such shipping contract was considered by the Court of Appeals of the Fifth Circuit in Cau v. Texas & Pacific Railway Company, 113 Fed. 91, 51 C. C. A. 76. That case grew out of a loss from the same fire involved in the case at bar. The validity of the fire exemption clause in the bill of lading was assailed on grounds quite similar to these here interposed. The ruling of the court is expressed in the syllabus as follows:

"A shipper is bound by a provision in a bill of lading exempting the carrier from liability for loss of the goods by fire, where he was chargeable with knowledge that the bill contained such clause, and made no objection thereto, and it is not shown that the loss resulted from the carrier's negligence."

On writ of error to the Supreme Court this ruling was affirmed. 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1053. The Supreme Court decided, in effect, every contention here made by plaintiffs in error. It held that it was perfectly competent for the carrier, by special contract, to limit its common-law liability in this respect, so long as it practiced no deceit or fraud on the shipper in making it. In respect of the suggestion that there was no independent consideration for the exemption, the court said:

"This point was made in York Co. v. Central Railroad, 3 Wall. 107, 18 L. Ed. 170. In response it was said: 'The second position is answered by the fact that there is no evidence that a consideration was not given for the stipulation. The company probably had rates of charges proportioned to the risks they assumed from the nature of the goods carried, and the exception of losses by fire must necessarily have affected the compensation demanded. Be this as it may, the consideration expressed was sufficient to support the entire contract made.' In other words, the consideration expressed in the bill of lading was sufficient to support its stipulations. This effect is not averted by showing that the defendant had only one rate. It was the rate also of all other roads, and

139 F.—9

presumably it was adopted and offered to shippers in view of the limitation of the common law liability of the roads.".

In respect of the contention that no option was given to the shipper to select under which, the common law or limited liability, he would ship his cotton, the court said: ·

"Primarily the carrier's responsibility is that expressed in the common law, and the shipper may insist upon the responsibility. But he may consent to a limitation of it, and this is the 'option and opportunity' which is offered to him. What other can be necessary? There can be no limitation of liability without the assent of·the shipper (New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 12 L. Ed. 465), and there can be no stipulation for any exemption by a carrier which is not just and reasonable in the eye of the law (Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627; Bank of Kentucky v. Adams Express Co., 93 U. S. 174, 23 L. Ed. 872). Inside of that limitation, the carrier may modify his responsibility by special contract with a shipper. A bill of lading limiting liability constitutes such a contract, and knowledge of the contents by the shipper will be presumed."

There, as here, the plaintiff introduced evidence to show that the railroad company had but one schedule of rates for said carriage. About the only discernible difference in the proof there offered and here consists in this: that here one of the plaintiffs, or their agent, testified that on some former occasion he was informed by defendant's agent that he was not authorized to give any other rate than that expressed in the bill of lading, with the fire exemption clause, and that no other kind of bill of lading had been furnished him by the railroad company. Coupled with this, however, the agent testified that he was not authorized to make such change without the permission of the superintendent at Dallas. The testimony of the superintendent of the company was that the company had such established common-law rate, higher than that specified in the bill of lading, and that the shipper could have obtained it by the asking. The plaintiffs conceded that on the occasion of this particular shipment they did not ask for such common-law rate, simply assuming that it would not be conceded. This fact does not differentiate the case from the rule of law laid down by the Supreme Court in the Cau Case. Being entitled to hold the public carrier to its common-law liability to accept and carry his goods without the fire exemption clause, by paying the higher rate, if he would hold the carrier to its common-law obligation he should, at the time the goods are tendered, demand of·the carrier an unqualified acceptance, and put upon it the responsibility of a refusal. Hutchinson on Carriers, § 240, says that:

"Every man of ordinary intelligence knows that no individual or company engaged in the business of carrying to distant places now undertakes to carry his goods subject to the old common-law liability of the carrier. He knows, moreover, that bills of lading are given, not only in evidence of the receipt of · the goods, but as expressing direct notice that they will be carried on certain terms. Knowing this, he cannot be willfully blind, and plead ignorance, when it was his duty to know; and knowing in such cases is assenting. As it was his intention to hold the carrier to his common-law liability, he should have said so, and have either declined to employ him or have sued him for his refusal, after tendering a reasonable sum for his services and risk."

In the view we take of the effect of the fire exemption clause, it is not necessary to determine the question discussed by respective

counsel as to whether or not the defendant railway company should be held to the acceptance of the cotton under its common-law obligation as a carrier beyond the limits of its own line, as the non-liability for the loss by fire would apply in either event.

To avoid this obstacle to a recovery, the final contention of counsel for plaintiff in error is that the railroad company in fact received from them the cotton and turned it over to the compress company for compression as matter of its own convenience in shipping, and that the compress company at the time of the fire held the cotton as the agent of the defendant in error, and therefore the negligence of the compress company is imputable to the carrier. The railway company did not, as alleged in the petition, first receive the cotton from the shipper, and then turn it over to the compress company. On the contrary, according to the universal custom which prevailed throughout the Southwest, the cotton when brought in for the merchant buyers was unloaded upon the platform of the compress company, which receipted therefor to the shipper, who then took the receipt to the railroad company at its station and exchanged it for the bill of lading. Under the regulation made by the Railroad Commissioners of Texas, the railroad company had no discretion in the matter of issuing a bill of lading in exchange for the receipt given by the compress company to the shipper. It cannot be maintained, however, that because of this arbitrary regulation the Compress Company became the agent of the railroad company for the custody and care of the cotton, so as to render the latter liable for injury thereto through the negligence of the former. The doctrine of respondeat superior rests upon the right and duty of the principal to direct and control the conduct and action of the imputed agent. Any regulation prescribed by an agency of the state, which would undertake to impose a pecuniary liability upon one person for the conduct or act of a third party, who is an independent actor, would contravene fundamental law. The compress company was a separate, independent contractor. Where the party sought to be held responsible as master for the negligence of the servant is without the authority to direct the time and manner of doing the work, or to select or direct the employés engaged therein, the doctrine of respondeat superior has no application. In short, to fix this obligation of accountability upon the party as master, he must have the right to direct the manner in which the business shall be done; "not only shall be done, but how it shall be done." New Orleans R. Co. v. Hanning, 15 Wall. 656, 21 L. Ed. 220; Singer Mfg. Co. v. Rahn, 132 U. S. 523, 10 Sup. Ct. 175, 33 L. Ed. 440; Brady v. Chic. Gt. Wn. Ry. Co., 114 Fed. 100, 52 C. C. A. 48, 55, 57 L. R. A. 712; Bailey v. Troy, etc., Co., 57 Vt. 256, 52 Am. Rep. 129; Casement v. Brown, 148 U. S. 615, 622, 13 Sup. Ct. 672, 37 L. Ed. 582. Bliss, J., in Hilsdorf v. City of St. Louis et al., 45 Mo. 94, 98, 100 Am. Dec. 352, said:

"The rule that prescribes the responsibility of principals, whether private persons or corporations, for acts of others, is based upon their power to control. If the master cannot command the servant, the acts of the servant are clearly not his. He is not the master, for the relation implied by that term is one of power—of command; and if the principal cannot control his agent

he is not an agent, but holds some other or additional relation. In neither case can the maxim respondeat superior apply to them, for there is no superior to respond."

From this has resulted the established doctrine that where one renders a service to another representing the will of his employer only in the result of his work, and not as to the means, he is a contractor, and not a servant. Clark's Adm'x v. H. & St. Joseph R. R. Co., 36 Mo. 218; Fink v. Missouri Furnace Co., 82 Mo. 276, 52 Am. Rep. 376; Burns v. McDonald, 57 Mo. App. 601; 20 Am. & Eng. Enc. of Law (2d Ed.) pp. 11, 12.

The compress company was a separate, independent contractor. It provided its own platform, its own machinery, its own employés, and determined for itself the manner and time of preparing the cotton for shipment. The right of the railroad company to thus have it prepared was recognized by the contract in the bill of lading. The actual custody and care of the cotton, until compressed and delivered on the cars of the carrier, remained with the compress company. This was the usage of the business in such shipments, well understood between the parties. It was hæc est conventio, as much as if written into the bill of lading. The giving of such bill of lading under such circumstances does not render the carrier liable until it has actually taken possession of the cotton described. Mr. Justice Miller, in Pollard v. Vinton, 105 U. S. 8, 26 L. Ed. 998, discussing the nature and effect of a bill of lading, said:

"It is an instrument of a twofold character. It is at once a receipt and a contract. In the former character it is an acknowledgment of the receipt of the property on board his vessel by the owner of the vessel. In the latter it is a contract to carry safely and deliver. The receipt of the goods lies at the foundation of the contract to carry and deliver. If no goods are actually received, there can be no valid contract to carry and to deliver. And the doctrine is applicable to transportation contracts made in that form by railway companies and other carriers by land as well as by sea."

In Missouri Pacific Railway Company v. McFadden, 154 U. S. 155, 14 Sup. Ct. 990, 38 L. Ed. 944, the answer alleged a state of facts quite similar to those under review. While admitting that the defendant had issued the bill of lading for the cotton, the cotton had not, indeed, been delivered to it; that according to the custom, well known to the shippers, after the cotton was placed on the platform at the compress to be compressed the latter would issue a bill of lading to the consignors, when the agent of the compress company would check out the cotton intended the shipper would make out a bill of lading, which would be O. K.'d by the superintendent of the compress company, and afterwards would be brought to the agent of the defendant, and by it signed, and the defendant would actually receive the cotton only after it was compressed and delivered upon its cars; that this course was pursued as a matter of convenience by the compress company and the shipper; and that it was not intended that the liability of the carrier would attach until the cotton was actually delivered upon its cars. The cotton was destroyed by fire while in the hands of the defendant. Exceptions to this answer were taken by the plaintiff,

and were sustained by the Circuit Court. While the bill of lading raised a prima facies that the goods had been received by the carrier, yet as the fact was that the property at the time of signing the bill of lading was in the hands of the shipper through the compress company for the purpose of being compressed according to the prevalent usage, the Supreme Court applied the elementary rule that the liability of the carrier with respect to the goods "commenced with their delivery to him, and this delivery must be complete, so as to put upon him the exclusive duty of seeing to their safety. The law will not divide the duty or the obligation between the carrier and the owner of the goods. It must rest entirely upon the one or the other, and until it has become imposed upon the carrier by a delivery and acceptance he cannot be held responsible for them."

The case of Edwards & Co. v. Texas Midland R. Co. (Tex. Civ. App.) 81 S. W. 800, in its essential facts is quite similar to the case at bar. The only practical difference is that after the cotton was brought by the owner to the platform of the compress company and receipted for, and after the receipt was taken to the agent of the carrier to exchange for a bill of lading, it was delayed to await the taking out of the insurance policy contemplated by said regulation of the State Railroad Commissioners, but before it was issued the cotton was destroyed by fire. The mode of procedure was practically identical with that in the case at bar. The cost of compression was included in the rates paid by the shipper to the railroad company, which was to pay the compress company. It was held that under such custom and usage the compress company exercised a distinct and independent employment; that the cotton had not "been stored for compression in the first instance by the railroad company"; that, as the cotton at the time of the fire had not been compressed, it was not, therefore, ready for shipment. "Until the cotton was compressed and loaded onto the cars, it was in the exclusive and physical possession and under the exclusive control of the compress company, to be stored wherever and cared for as the compress company saw fit; and neither the owner nor the carrier had or exercised any control whatever over its care, custody, storage, or compression while it was on the compress platform. * * * After the cotton had been placed on the platform of the compress company, the shipper exercised no control over it, and had nothing whatever to do with it, except to give shipping directions to the compress company. The superintendent of the compress company was the only one to determine when the shipping conditions should be carried out; that is, when the cotton would be compressed and loaded onto the cars." There, as here, the particular cotton, when the fire occurred, had not been compressed. The court further found that "there was absolutely no evidence in the case which had any tendency to show that the railroad company had or exercised any control over the cotton or the place where it was kept by the compress company before it was put upon the cars by that company." The conclusion of the court was that "appellee is not liable, and appellants are not entitled to

recover unless appellee had possession or control of the cotton at the time it was destroyed by fire." So, in Martin v. Railway Co., 55 Ark. 510, 19 S. W. 314, a case parallel to this, it was distinctly held that the compress company was of the character of an independent contractor, and therefore the railroad company was not liable for the negligence of the compress company in storing or handling the cotton.

There is much force in the suggestion of counsel for defendant in error that in principle the office of the compress company should be likened to that of stevedores engaged in the business of loading and unloading water carrying crafts, who are held to be independent contractors, for whose acts of negligence the carrier is not liable, as the stevedores are not its agents. Dwyer v. National Steamship Co. (C. C.) 4 Fed. 493; Rankin v. Merchants' & Miners' Tr. Co., 73 Ga. 229, 54 Am. Rep. 874.

Other questions are discussed by learned counsel for plaintiffs in error, which have, by the courts of recognized authority, either been determined adversely to the contention of counsel, or which do not affect the conclusion of this court.

It results that the judgment of the Circuit Court must be affirmed.