## D. V. HAMILTON, Respondent, v. THE CHICAGO & ALTON RAILROAD COMPANY, Appellant.

**Kansas City Court of Appeals, February 16, 1914.**

1. **CARRIERS OF LIVE STOCK: Damages: Shipment.** Suit instituted by plaintiff to recover damages from the defendant for the negligent shipment of a carload of mules from the National Stockyards in Illinois to McCredie, Missouri. The defendant unloaded the mules under the Federal 28-Hour Law and two of the mules died from pneumonia and two others were damaged by disease. The plaintiff failed to give five days' notice as provided by the bill of lading for such damages. *Held,* that the plaintiff was not entitled to recover, because he failed to give proper notice of loss.

2. ———: ———: **Interstate Shipment.** Interstate shipment is controlled entirely by the enactments of Congress in relation to interstate commerce and the Federal decisions thereunder. Consequently, a contract for an interstate shipment must be construed with reference to those decisions without regard to the rule of decisions heretofore prevailing in this State.

3. ———: ———: **Notice.** In the absence of evidence that notice of loss or damages was given the carrier, the burden of proof is on the plaintiff to show that notice was given.

4. ———: ———: **Validity of Notice.** A contract of shipment which provides that notice must be given the carrier within five days is valid, and the failure to give the notice is fatal to a right to recover.

Appeal from Calloway Circuit Court.—*Hon. D. H. Harris,* Judge.

REVERSED.

*Scarritt, Scarritt, Jones & Miller* and *T. A. Boulware* for appellant.

(1) The shipment of mules involved in this suit was from the National Stockyards, Illinois, to McCredie, Missouri, an interstate shipment, and is therefore governed by the laws of the United States and not

177 Mo. App. 10

by any law of the State of Missouri. Joseph v. Railroad, 157 S. W. 837; Railroad v. Miller, 226 U. S. 513, 33 Sup. Ct. 155, 57 L. Ed.; Railroad v. Latta, 226 U. S. 519, 33 Sup. Ct. 155, 57 L. Ed.; Railroad v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed.; Railroad v. Harriman Bros., 227 U. S. 657, 33 Sup. Ct. 397; Cau v. Railroad, 194 U. S. 427, 24 Sup. Ct. 662, 48 L. Ed. 1053; Hart v. Railroad, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; Arthur v. Railroad, 139 Fed. 127, 71 C. C. A. 391; Railroad v. Philips, 17 Okla. 264, 87 Pac. 470; Railroad v. Kirkham, 63 Kan. 255, 65 Pac. 261. (2) Plaintiff failed to prove any negligent delay, and that it was the duty of plaintiff to prove not only delay but that the same was the result of negligence on the part of the railroad company and that it was the direct cause of the diseased condition of the mules. Decker v. Railroad, 149 Mo. App. 573; Clark v. Railroad, 138 Mo. App. 424; Moore v. Railroad, 28 Mo. App. 622; Warner v. Railroad, 178 Mo. 133; Cash v. Railroad, 81 Mo. App. 109; Peterson v. Railroad, 102 N. W. (S. Dak.) 595-97

*Fauntleroy, Cullen & Hay* for respondent.

(1) The burden is upon defendant to prove that the contract relied upon is supported by a valid consideration. Duvenick v. Railroad, 57 Mo. App. 550; McFadden v. Railroad, 92 Mo. 343; Powder Co. v. Railroad, 101 Mo. App. 442. (2) An affreightment contract, reciting that the price charged for the transportation is "at the rate of tariff per hundredweight" means that the shipment was at the regular schedule tariff rate in the absence of evidence that the rate was in fact a reduced rate. George v. Railroad, 214 Mo. 551; Burns v. Railroad, 151 Mo. App. 573; Besheer v. Railroad, 151 Mo. App. 80. (3) The burden was upon defendant to prove that notice was not given. McNichol v. Express Co., 12 Mo. App. 405; Libby v. Railroad, 137 Mo. App. 276; 1 Hutchinson on Car-

riers (3 Ed.), 447. (4) From the very nature of the relation of carrier and shipper circumstances that even slightly tend to show this (negligence) are sufficient, especially where the knowledge of what caused the delay is with the carrier and not the shipper. Muir v. Railroad, 168 Mo. App. 544; Lay v. Railroad, 157 Mo. App. 467; Bushnell v. Railroad, 118 Mo. App. 618; Gilbert v. Railroad, 132 Mo. App. 697.

TRIMBLE, J.—This is a suit for damages alleged to have been caused by negligent delay in the shipment of a car of twenty-four head of mules from the National Stockyards in Illinois to McCredie, Missouri. Plaintiff's charge is that by reason of the exposure of the mules, caused by the negligent delay, two of them died from pneumonia, two others contracted a disease from which they afterward recovered, though in a damaged condition, and the remaining twenty lost weight and appetite, all to plaintiff's damage in the sum of $750.

The answer denied this and set up that the shipment was under a written contract which provided that, in consideration of a reduced rate, plaintiff declared the value of said mules to be $100 each, and that in the event of injury or death of any of said mules, defendant's liability should not exceed said value of $100, and that plaintiff, by reason of such agreement, is estopped from claiming any greater value than $100 each. The answer further set up that said contract provided that if any loss or damage occurred to said mules during shipment, plaintiff should, within five days after the mules had been unloaded, give to defendant notice in writing of his claim, and if he failed to do so, then defendant should be released therefrom, and that plaintiff failed to give such notice.

Exposure is the only cause alleged for the sickness and loss of weight, and the alleged exposure was caused by unloading the mules from the car at Mexico,

Missouri, and keeping them in the stock pens there from 2:20 p. m. of one day until 7:30 a. m. of the next. This unloading at Mexico was made necessary by the Federal Twenty-eight Hour Law, but plaintiff claims the mules would not have been on the train Twenty-eight hours if no negligent delay had occurred, hence the sickness resulted, according to plaintiff's contention, directly from the alleged negligent delay.

The mules started on their journey at 2:30 p. m., September 10, 1911. They reached Mexico, Mo., at 2:20 p. m., of September 11th, and were there unloaded into stock pens having sheds. Defendant claims the pens were in good condition, but plaintiff says they were muddy. No rain fell on the 11th but it did rain the day before. A weather record, kept at Mexico, showed there was no rain on the 11th or 12th of September, and that the highest temperature of the 11th was ninety-one degrees at noon and the lowest was sixty-three degrees at night. The mules were, therefore, unloaded when the thermometer was around ninety degrees, and that night the temperature fell to sixty-three.

Defendant contends that there was no evidence of negligent delay, and furthermore that keeping the mules in the pens at Mexico under such weather conditions could not be said to be "exposure" sufficient to have caused the sickness alleged. There was evidence tending very strongly to show that the mules had stockyards fever; that the yards from which they came were infected with it; that stockyards fever is a contagious and infectious disease, and frequently develops into pneumonia. Plaintiff, however, offered testimony to show that the disease developed at such a time after their stay in the pens at Mexico as to indicate that the disease originated there; that pneumonia was ordinarily brought on by exposure; that it usually manifested itself in about twenty-four to forty-eight hours after exposure; and that the exposure likely to

bring on pneumonia would ordinarily consist of a
change from a warm and dry, to a wet and cool, place
of confinement. The mules left Mexico at 7:30 a. m.
of the 12th and arrived at McCredie, their destination,
sixteen miles away, at 9:45 a. m. of the same day.
Plaintiff noticed five or six of them coughing, and the
next day some of the mules showed evidence of pneu-
monia.

It is unnecessary, however, for us to decide
whether there was any substantial evidence to show
negligent delay or to show with reasonable certainty
that the sickness arose from the keeping of the mules
in the pens at Mexico rather than from stockyards
fever contracted at the stock pens in Illinois, if we
must give effect to the clause in the shipping contract
providing that plaintiff, in order to recover, must give
notice of loss or damage within five days.

The shipment, being from Illinois to Missouri, was
an interstate commerce transaction. It was made on
a written contract signed by both shipper and carrier.
(Indeed, the amendment to the Hepburn Act, commonly
known as the Carmack Amendment, passed June 29,
1906, abrogates the shipper's right to have the car-
rier take a shipment without a contract and carry the
shipper's goods solely by reason of its duty as a com-
mon carrier, but compels the carrier to issue a receipt
or bill of lading therefor which by its nature is or
becomes a contract between them). This written con-
tract contained the following provisions:

"That for the considerations, mutual agreements
and conditions herein contained the party of the first
part (the carrier) will transport for the party of the
second part . . . one car of twenty-four head of
mules from National Stockyards, Ill., to McCredie, Mo.,
at the *traffic* rate per one hundred, said rate being *less*
than the rate charged for the transportation of such
cattle at carrier's risk or when the valuation is de-

clared to be greater than that given below, subject, however, to the following terms and conditions:

"First. The second party agrees that prior to the execution of this contract he demanded to be advised of the rates charged by the first party for the carriage of said animals, as aforesaid, and thereupon was offered by the said railway company alternative rates proportioned to the value of the said animals, such value to be fixed and declared by the second party, or his agent, and that such alternative rates are made in pursuance of the provisions relating thereto of the classification of freights adopted as regulations by the said railway company, and fully set forth as follows, to-wit:

"Live-Stock.—Ratings given above are based upon valuations declared by shippers not exceeding the following: Each Horse or Pony (Gelding, Mare or Stallion), Mules or Jack, $100. . . .

"When the declared value exceeds the above, an addition of twenty-five per cent will be made to the rate for each 100 per cent or fraction thereof, of additional 'declared valuation per head.' Said alternative rates are fully shown in and upon the regular tariffs and classifications printed, published and posted by said company as required by law; and said second party has voluntarily chosen the rates herein provided for, and voluntarily agreed that the cattle should be transported at the owner's risk.

"Second. The second party further hereby agrees and declares said animals to be of the value as follows, to-wit:

"Each Mule value $100. . . .

"Eleventh. The second party further agrees that should any loss or damage of any kind occur to the property specified in this contract, the second party shall, within five days after the live stock in question has been unloaded, give notice in writing of his claim therefor to the first party, and in the event of his fail-

ure so to do said second party hereby releases and shall be barred from all claims of any kind or character against said first party arising out of any injury or damage to said stock.''

It is thus seen that in consideration of a reduced rate the value of the mules was declared to be $100 and such value was so declared in order to obtain such rate, and that one of the conditions of plaintiff's right to hold defendant liable for injury to the stock was that he should give notice thereof within five days after unloading the same. It also appears that on the day plaintiff received the stock he noticed they were coughing, and on the next day he noticed they had pneumonia. So that he could have notified defendant of his claim within the five days.

The shipment being an interstate shipment, it is controlled entirely by the enactments of Congress in relation to interstate commerce and the Federal decisions thereunder. Consequently, the contract in question must be construed with reference to those decisions without regard to the rule of decision heretofore prevailing in this State. [Adams Express Co. v. Croninger, 226 U. S. 491; Chicago, etc., R. Co. v. Miller, 226 U. S. 513; Chicago, etc., R. Co. v. Latta, 226 U. S. 519; Missouri, etc., R. Co. v. Harriman, 227 U. S. 657; Kansas City, etc., R. Co. v. Carl, 227 U. S. 639; McElvain v. Railroad, 158 S. W. 464; Joseph v. Railroad, 157 S. W. 837.]

The Federal decisions being absolutely controlling in the matter we must be guided by them. And in this case, it is not necessary to decide whether or not the provision in the contract for notice within five days is a limitation upon defendant's liability which requires a consideration to support it or whether it is a mere regulation which may be upheld without a consideration. Because, the Federal courts impose upon plaintiff the burden of showing no consideration for such provision and presume in favor of a consider-

ation. [Cau v. Railroad, 194 U. S. 427, l. c. 431; Hart
v. Railroad, 112 U. S. 331, l. c. 337; Arthur v. Rail-
road, 139 Fed. 127, l. c. 129; Robert v. Railroad, 148
Mo. App. 96, l. c. 110.] In the absence of evidence
that notice was given, the burden of proof is on plain-
tiff to show that notice was given. [The Westminster,
127 Fed. 680, l. c. 683; Metropolitan Trust Co. v. Rail-
road, 107 Fed. 628, l. c. 632; McElvain v. Railroad,
158 S. W. 464, l. c. 466; The St. Hubert, 107 Fed. 727.]
This disposes of plaintiff's objection that no proof
was made of notice. In addition to this, the written
contract clearly imparted and stated a consideration
which must be deemed to have been assented to by
plaintiff and binding upon him.

In the case of Joseph v. Railroad, 157 S. W. 837,
the St. Louis Court of Appeals, following the Federal
decisions, held that notice of damage was requisite un-
der the bill of lading, and reversed a judgment against
the carrier because no notice was given.

In Missouri, etc., R. Co. v. Harriman, 227 U. S.
657, l. c. 672, a provision of this character is upheld
provided the time is not unreasonably short.

In Clegg v. Railroad, 203 Fed. 971, l. c. 973, it was
held that a one-day notice was a valid condition prece-
dent to the recovery for delay, loss or injury to stock
and that failure to comply therewith prevented a recov-
ery. The court, on the page cited, say: "We are
clearly of the opinion that the eleventh provision of
the contract above quoted, relative to giving notice, was
a valid one, and the failure to give the notice fatal to
plaintiff's right to recover. [Cau v. Texas & Pac. Ry.
Co., 194 U. S. 427, 24 Sup. Ct. 662, 48 L. Ed. 1053;
Hart v. Penn. R. R. Co., 112 U. S. 331, 5 Sup. Ct. 151,
28 L. Ed. 717; Arthur v. Texas & Pac. Ry. Co., 139 Fed.
127, 71 C. C. A. 391; St. Louis & C. F. R. Co. v. Philips,
17 Okla. 264, 87 Pac. 470; Railway Co. v. Kirkham,
63 Kan. 255, 65 Pac. 261.]" To the same effect, see
also the case of The Westminster, 127 Fed. 680, and

The Hubert, 107 Fed. 727; Ingram v. Weir, 166 Fed. 328; Ginn v. Transit Co., 85 Fed. 985.

This being an interstate shipment, and therefore governed exclusively by Federal law and Federal decisions, there is no need of discussing or referring to the rule of decision prevailing in this State with respect to the validity or enforcement of the clause in question.

It follows that the judgment must be reversed. All concur.