This case is before us on a second appeal by defendant. The first was disposed of as set out in Jordan v. Railroad, 196 S.W. 417. It is an action for damages sustained in an interstate shipment of horses from Lemons, Missouri, to Buffalo, New York. The shipping contract was made with defendant (upon which line the shipment originated), on the 2d day of March, 1907, and the shipment was started on that day.
The horses were transported to Chicago over the defendant's line of railway and from thence to Buffalo over the line of the Michigan Central Railroad Company. It is conceded they reached Chicago in due time and in good condition. The alleged delay and injury to the horses occurred on the line of the connecting carrier.
The shipping contract set up by defendant contained a provision stating that the railway company should not "be liable for loss or damage after delivery to any connecting line, nor for any loss or damage not incurred upon its own line."
In another part of the contract was a provision as to notice of claim for damages which reads as follows:
"It is further agreed that the said railway company shall in no case be liable for any loss or damage to said animals, unless a claim shall be made in writing by the owner or owners thereof, or his or their agents, and delivered to a general freight agent of the said railway company, or to the agent of said railway company at the station from which the animals are shipped, or to the agent at the point of destination, within ten (10) days from the time the said animals are removed from the cars. And in case of loss or damage upon any connecting line, such connecting line shall not be in any manner liable unless claim shall be made in like manner in writing to such general officer or agent of such connecting line." *Page 59 
Notice was not given within ten days from the time the horses were removed from the cars, and this is one of the grounds upon which defendant insists its demurrer to the evidence should have been sustained.
As the contract and shipment were made prior to the Act of March 4, 1915 (38 U.S. States at Large 1196), amending the Interstate Commerce law so as to obviate the necessity of notice in certain circumstances, said amendment does not affect the rights of parties as fixed by the contract. [Northern, etc., R. Co. v. Wall, Admr., 241 U.S. 87, 93.] Hence the above provision is valid and, if applicable under the law and the facts in this case, the failure to give such notice will defeat recovery. [Georgia, etc., R. Co. v. Blish Milling Co., 241 U.S. 190; Hamilton v. Chicago, etc. R. Co., 177 Mo. App. 145.]
On the former appeal a majority of the members of this court, while conceding the validity of a provision as to notice, held that it was not available to the initial carrier as a defense in this case because a proper construction of the contract disclosed that the parties intended that notice was required to be given only to the line upon which the loss or injury occurred, and that as the loss or injury occurred on the connecting line and suit was against the initial carrier, the defense of want of notice was not available to it. It seems to the author hereof that, if it were allowable to consider the intention of the parties to the contract, such intention must be determined in the light of the circumstances, the entire contract and all of its terms; and that the manifest intention was that whatever line was liable should have notice. The fact that the contract contained a separate and distinct but void, provision that the defendant would not be liable if the loss or injury occurred on a connecting line ought not to, and does not destroy that intention. The contract says the defendant "shall in no case be liable. . . . unless a claim shall be made in writing," etc.; that such notice shall be delivered to the company's general freight agent, or to the agentat point of destination (none of which was done); and that if the *Page 60 
loss or damage occurred upon the connecting line it should not be liable unless it was notified in like manner.
But, under the Federal law, the contract of shipment executed by the initial carrier embodies the contract for transportation from point of origin to destination without regard to theintention of the parties. [Texas, etc., R. Co. v. Leatherwood, 39 Sup. Ct. Rep. 517; Missouri, etc., R. Co. v. Ward,244 U.S. 383.] The Federal statute enters into and forms a part of the contract as if it had been explicitly written into its terms. [Northern etc., R. Co. v. Wall, Admr., 241 U.S. 87, 91-92.] Hence the void provision that the defendant should not be liable for loss or damage not occurring on its own line should not be given any effect whatever either in determining the liability of the defendant or in ascertaining the intention of the parties. "Under the Carmack Amendment the several carriers must be treated not as independent contracting parties, but as one system; and . . . the connecting lines become in effect mere agents whose duty it is to forward the goods under the terms of the contract made by their principal, the initial carrier." (Italics the author's). [Texas, etc., R. Co. v. Leatherwood, 39 U.S. Sup. Ct. Reporter 517, l.c. 518.] The provision that the railway company "shall inno case be liable . . . unless a claim shall be made in writing," etc., is valid; the law says the railway company is the principal in the work and obligation of transportation throughout the entire journey, and that the provision limiting liability of the principal to matters occurring on its own line is void. How, then, can this void provision destroy thevalid provision above mentioned?
The fact that the contract also provides that in case of loss upon any connecting line such connecting line shall not be liable unless claim in like manner shall be made to it, cannot, in my judgment, have any effect or influence upon the point under consideration, since a similar provision was in the contract in Chesapeake, etc., R. Co. v. McLaughlin, 242 U, S. 142, 143, *Page 61 
and yet the Supreme Court held that the want of notice to the initial carrier was fatal to the recovery.
Again, it seems that under the rule announced by the majority view in the decision of this case on the former appeal, the initial carrier would be held liable if the injury was committed by the connecting carrier, but the latter would beabsolved from liability although it was the real wrongdoer. The object of the federal act is not only to make the initial carrier responsible, no matter on whose line the injury occurs, but to establish "unity of responsibility" and the shipping contract "is not to be construed in one way with respect to the initial carrier and in another with respect to the connecting . . . carrier." [Georgia, etc., R. Co. v. Blish Milling Co.,241 U.S. 190, l.c. 196.] In other words, the contract must be so construed as that, if sought to be enforced, liability or non-liability will be the same whether recovery be demanded of either the originating or terminal carrier. And in this case, not only must defendant be conclusively treated as having made a through
contract, electing to treat the connecting carrier as its agent, but the petition pleaded that the defendant "by and through its agents, servants and employees, so negligently and carelessly conducted itself in the premises that said horses were not transported and delivered safely, within a reasonable time and in good condition." Consequently the case "must be treated as though the point of destination was on its (the defendant's) own line." [Galveston, etc., R. Co. v. Wallace, 223 U.S. 481, l.c. 492.]
Under the decisions of the United States Supreme Court, a clause in the shipping contract requiring presentation of a written claim is "valid and controlling as to any liability arising from beginning to end of the transportation contracted for." (Italics mine). [Erie R. Co. v. Shuart, 39 U.S. Sup. Ct. Reporter 519.] In Baltimore, etc., R. Co. v. Leach, 39 U.S. Sup. Ct. Reporter 254, a void provision in the shipping contract was not allowed to prevail over, or have any effect upon, a valid provision as to notice even though the void *Page 62 
provision was the only thing on which the provision as to notice could operate.
If the view set forth in the foregoing is correct, the case should be reversed, and, in that event, it is unnecessary to pass upon the other matters complained of as error.
The foregoing was written and turned over to my associates as embodying my view of what should be done in the case. However, on the point hereinbefore discussed, they adhere to the view held by them on the former appeal and take the position that since such is the ruling of the court thereon it should be followed and the other points raised by the appeal should be considered and passed upon.
The shipment was loaded at Lemons shortly before 11 o'clock in the forenoon of March 2, 1907, reached Moulton Saturday afternoon where they were unloaded at shipper's request and held till Sunday to secure the rest of the load or shipment. The horses left Moulton, Iowa, a little before noon Sunday and got to Chicago shortly before daylight Monday morning, March 4th. The horses were fed and watered Monday and were thereafter placed in another car just before dark, somewhere near 6 o'clock Monday evening, and left Chicago about that hour over the Michigan Central Railroad and arrived at Buffalo, N.Y., between noon and 2 p.m., Wednesday March 6, 1907. The alleged delay complained of occurred between Chicago and Buffalo. Plaintiff accompanied the shipment from Chicago to within 50 or 60 miles of Buffalo, and he then went on to Buffalo on a passenger train.
When the horses got to Buffalo, plaintiff helped to unload them. One was sick and the others were in "a bad condition," being "dauncy, hungry and lank" as well as weak. The sick one was taken to a hospital where it died. The others plaintiff cared for till they were sold twelve days later. It was admitted that it is 535½ miles from Chicago to Buffalo.
Although plaintiff contends that the shipping contract did not in this case call for written notice, yet manifestly *Page 63 
he so construed it for on March 25, 1907, a written notice was given, claiming damages "for loss of one mare" $300 and "damages on balance of car load" $300. This notice was after the expiration of the ten days called for in the contract and long after the horses had been removed from the possession of the carrier and sold. The notice did not say what caused the damage and it does not appear therein what the damage came from unless the delay be implied in the statement therein that the horses were "44 hours in transit." However, the defendant's evidence is that the reasonable and schedule time for live stock from Chicago to Buffalo was 46 hours and that plaintiff's stock was transported, on the shipment in question, in 42 hours or four hours less than the schedule.
But plaintiff testified that he had made as many as 30 or 40 shipments from Chicago to Buffalo and that he had made it in 18 hours and that he thought that was the schedule time. We cannot say that plaintiff had no evidence to show an unreasonable time occupied in the run from Chicago to Buffalo. Plaintiff testified that the stops were many and often, some of them as long as five or six hours apiece; that while it was cold and "spitting snow" all the way the track was not obstructed by snow, the roadbed was good, and no reason appeared for the delay, and when he inquired for the reason, the men would not tell him. We cannot say there was no evidence whatever of negligent delay.
The original petition was filed March 29, 1909, the first amended petition was filed March 22, 1918, and the second amended petition was filed August 1, 1918. All three of these stated a cause of action based explicitly and purely on negligent delay, the charge in them being that the defendant carelessly and negligently conducted itself in that it "unnecessarily and negligently delayed said shipment to plaintiff's damage," etc., and that "by reason of such carelessness and negligence as aforesaid" the plaintiff lost one mare and the others were damaged and plaintiff lost the expense of extra care and feed. *Page 64 
The third amended petition charged that the defendant "undertook to transport to and deliver at Buffalo, New York,safely within a reasonable time and in good condition," and that said defendant "so negligently and carelessly conducted itself in the premises that said horses were not transported and delivered safely, within a reasonable time and in goodcondition, but by reason of the negligence and carelessness" of the defendant, its agents, servants and employees, one of the horses died and the remainder were made sick an sore and badly damaged, etc.
If the third amended petition, as thus stated, is broad enough to state a cause of action based not only on negligent delay but also on a negligent failure to properly handle said stock during the transportation, then the latter feature is barred by the statute since the answer to the third amended petition pleaded the statute as to any such cause of action, and such new element, if any, was not introduced into the case until nine years after it accrual. Were it not for the way plaintiff's case was submitted in the instructions, we would not notice the method of statement in the third amended petition, but could perhaps treat the bad condition of the horses as being at last impliedly due to the delay and the length of time in transit, and the petition would be good in the absence of any attack thereon even though the sick and otherwise bad condition is not alleged to have resulted from unreasonable delay.
The trouble lies in this, that plaintiff's instruction No. 1, submitting the case and directing a verdict, does not squarely axplicity submit the sole negligence of unusual delay and authorize a verdict for the damages accruing solely therefrom, but it submits the case and authorizes a verdict in the same broad general terms of the petition. In other words, it permits the jury to allow damages if the stock were in bad condition even if such condition did not arise from the unusual length of time the stock was in transit and even if there was no unusual delay. The instruction told the jury that if defendant, at Lemons, Missouri, received of plaintiff the horses in *Page 65 
good condition to be transported to Buffalo, defendant "was bound to use reasonable diligence to transport said livestock to their destination and there deliver same within a reasonable time and in good condition considering the distance traveled;" and that if they found from the evidence that the defendant "negligentlyfailed so to do, and that by reason of such negligence one of said horses died and the remainder were made sick and sore and were damaged, then this defendant is liable for such damage and your verdict should be for the plaintiff."
Now, a carrier is not liable for the bad condition of live stock at the end of a journey unless such bad condition is the result of some negligence on the part of the carrier. As a necessary and natural incident to a long journey livestock become "weak, dauncy, hungry and lank." They are the natural results of long trips in cold and snowy weather, even where there is no negligence either of delay or in handling. And for such results, in the absence of negligence, the carrier is not liable. [10 C.J. 122.] Neither is it liable for loss or injury on account of a mere want of vitality, sickness, restlessness or vicious propensities of livestock. [10 C.J. 123, 124; Cunningham v. Wabash R. Co., 167 Mo. App. 273, 282; Jackson v. Chicago, etc., R. Co., 147 N.W. 732, 733.] The instruction was so drawn as to lead the jury to understand that the defendant was liable for whatever bad condition the stock was in whether it arose from negligent delay or from any other cause, and the words "considering the distance traveled" used in the first part of the instruction are not sufficient to explain and keep clear that distinction. Especially is this true since in plaintiff's instruction No. 2a, the jury were told that if they found from the evidence "that plaintiff has been damaged by reason of the negligent failure, if any, of the Michigan Central Railroad Company, to use reasonable diligence to transport and deliver said horses within a reasonable time and in good condition,
then this defendant is liable to the plaintiff for such damages, if any, even though they may further find that said horses were *Page 66 
transported from Lemons, Missouri, to Chicago, Illinois, within a reasonable time and in good condition." Under these instructions, the jury could find a verdict for plaintiff even though they believed the stock was transported in a reasonable time. They could say the stock were carried in a reasonable time, but they were not delivered in good condition, hence they find for plaintiff.
Instruction No. 3 on the measure of damages told the jury that if they found for plaintiff they might "allow him simple interest on whatever amount of damages you find he has sustained at the rate of six per cent annum from March 25, 1907." The third amended petition does not place plaintiff's cause of action on a breach of contract but upon a negligent failure to perform its common-law duty. The case is one in tort and not on contract. There was no conversion or seizure of the property so as to bring it within the purview of section 5430, Revised Statutes, 1909. Nor does the case come within section 7179 Revised Statutes 1909, or any of the sections in chapter 62 on Interest. And since interest is a creature of the statute, it is not allowable in cases of this character. [Steiger v. Hannibal, etc., R. Co.,73 Mo. 33; Gerst v. St. Louis, 185 Mo. 191; Kimes v. St. Louis, etc., R. Co., 85 Mo. 611; New York, etc., R. Co. v. Estill,147 U.S. 621, 622.] Even if this were the only error in the case, it could not be cured by remittitur for we cannot tell by the verdict what amount was allowed as damages and what as interest. The fact that the jury first returned a verdict for "$360 with interest at six per cent," which the court would not receive, the jury retired and thereafter brought in a verdict "in the sum of $620" does not authorize us to interpret the amount of the last verdict as being the damages of $360 with the interest thereon included.
Other complaints are made but they are not deemed to be of importance, hence they need not be noticed. The judgment is reversed and, in accordance with the views of the majority of this court, the cause is remanded for a new trial. The other judges concur except as to what is herein said as to the effect of the failure to give notice. *Page 67